## ALBANY OYER AND TERMINER.

### THE PEOPLE agt. CHARLES H. PHELPS.

*Phelps sentenced ; fifteen years at hard labor in the Albany*
*Penitentiary ; judge* WESTBROOK's *address to the prisoner ;*
*the end of a tedious trial.*

THE announcement that Chas. H. Phelps was to receive
sentence Tuesday morning, on the three indictments on which
he was lately found guilty, served to crowd the court room by
ten o'clock, to its utmost capacity. Not only were all the
seats occupied, but the standing room in the aisles packed
full.

As soon as the court had been opened, judge WESTBROOK
announced that after consultation with his associates, he had
concluded to pass sentence now.

District attorney Moak thereupon moved for sentence
upon the three several indictments.

Judge WESTBROOK — " Charles H. Phelps, stand up."

Phelps, without changing countenance, immediately arose
from his seat, by the side of his counsel, directly in front of
the bench.

Judge WESTBROOK — " What have you to say why sentence
should not now be pronounced on you under the first indict-
ment, for larceny, of which you have been found guilty ? "

Phelps — " Nothing."

Judge WESTBROOK — " What have you to say in regard to
the second indictment, why sentence should not now be pro-
nounced upon you for the forgery charged therein, and of
which you stand convicted ? "

Phelps — " Nothing."

Judge WESTBROOK — "What have you to say in regard to the third indictment, why sentence should not now be pronounced on you for the grand larceny charged therein, and of which you stand convicted?"

Phelps — "Nothing."

The prisoner was then sworn, and, in response to the usual questions addressed him by the court, responded that his age was forty-two, that he was born in Oneida county, that he had been in the express business, and that he had no trade.

These formalities over, judge WESTBROOK, amid a breathless silence, proceeded to pronounce sentence. He spoke as follows:

### THE SENTENCE.

The duty, Charles H. Phelps, which the court is called upon to discharge this morning, is almost as sad and painful to them as it possibly can be to you. Whatever doubts exist as to the legal character of your acts, there are none as to their moral character. Your conscience must accord with that of the public which pronounces you guilty of a violation of that Divine command, which declares "Thou shalt not steal."

To every right-minded man, the act of a trusted employe who unlawfully appropriates his employer's money to his own use, evinces a heart equally depraved with that of the thief who stealthily puts his hand into another's pocket and filches therefrom its contents. Nay, in the former case there is added to the enormity of the crime, the betrayal of trust, and the breaking of an implied promise, at least, which every hiring to serve involves, a willful disregard of a plighted word, therefore, and of a confident repose in another's honor, which many a thief would respect.

We know it is claimed that you took intending to return; but the enforced borrowing of another's money by an unlawful taking against the owner's will, hoping, by subjecting it to the hazard of gambling speculation to return its equivalent, is just as reprehensible in wholesome morals and sound pub-

People agt. Phelps.

lic policy as the taking with no such intent. But we are not certain that the thought of restitution was with you a controlling one. Your acts seem to have been committed with deliberation, and after you had taken the advice of counsel as to their legal quality. In Jersey City, whilst confessing to the state treasurer, Mr. Thomas Raines, that you had a considerable part of the money under your control, you refused to tell where it was or to restore it to the custody of the state, unless you were promised immunity from punishment and allowed to use it in following up speculations, alleging that counsel had advised you that the law could not punish you, and that a simple breach of trust was the limit of your legal accountability. As we have not the whole of that interview between you and your counsel — we do not mean any of the three honorable men who have endeavored to shield you during these recent trials — we pass no judgment upon the morality of that advice, but we do say that it is unfortunate for you that you heard and heeded it. The restoration of a considerable sum then, instead of a refusal, would have had great weight in determining the extent of the punishment.

This advice, however unfortunate as it was to you, has had, at least to you unexpected, one good result. It has brought you face to face with the violated laws of the state, and enabled this court, by making an example of you, to say to all who hold similar positions of trust, and who need the terror of present punishment to keep them in the paths of rectitude, that this same idea of a *" breach of trust,"* which has ruined many a trusted clerk, and bankrupted many a confiding employer, is unsound in law, when applied to persons situated as you were, and to transactions such as those in which you were an actor.

All has been done for you by learned counsel which could have been done. We have listened to their arguments patiently, and weighed them with unbiased minds, but though skillfully made and ably presented, they have failed to satisfy us that the *human* laws, by whose authority we speak, do not,

as the laws of God surely do, pronounce you a criminal and amenable for their violation. That they do so regard you we fully believe, and earnest thought and further examination have only deepened and made clear our original convictions expressed in your hearing early in the progress of the trials.

Nothing now remains but to pronounce judgment upon you for the crimes of which you stand convicted. In that punishment which we have the right to inflict, the law has invested us with considerable discretion. In fixing its limits, remembering the large amount of money taken — over $300,000 — the deliberation with which you perpetrated the crimes, the fact that several other indictments remain untried, and above all the importance of an example to repress a kind of crime very frequent of late, we have determined, not, as we hope tyrannically or vindictively, but with a conscious sense of our own responsibility to the Great Tribunal, to inflict upon you the maximum of punishment.

The judgment of the court is that you, Charles H. Phelps, for the felony and grand larceny in stealing the draft of $7,500, drawn by the Farmers and Mechanics' Savings Bank of the city of Lockport, by S. Curtis Lewis, its secretary, upon the Central National Bank of New York, of which you stand convicted, be confined and imprisoned at hard labor in the penitentiary of the county of Albany for the period of five years.

That for the forgery and felony in making a false entry upon one of the books of account in the office of the state treasurer, of which you stand convicted, you be confined and imprisoned at hard labor in the penitentiary of the county of Albany for the period of five years, to commence at the termination of the imprisonment to which you have been adjudged for the crime of grand larceny in stealing the draft or bill of exchange of $7,500.

That for the felony and grand larceny in stealing the draft or bill of exchange for $400, drawn by the First National Bank of Utica, by P. V. Rogers, its cashier, upon the Metro-

politan National Bank of New York, of which you stand convicted, you be imprisoned at hard labor in the penitentiary of the county of Albany for the period of five years, such imprisonment to commence at the termination of the second term of imprisonment, to which you have been adjudged for the crime of forgery in the third degree, for willfully and feloniously making a false entry in one of the books of account kept in the office of the treasurer of the state of New York.

We are well aware that this is a severe sentence. May it be to your profit, and to the profit of all who contemplate similar transactions.

During the delivery of this sentence that consigned him to a living grave in the full vigor of his manhood there to remain until old age shall have overtaken him, Phelps remained to all appearances as unmoved as if he was merely an unconcerned spectator of the scene that was transpiring.

His hand, while he held the Bible during the administration of the oath, showed no sign of unsteadiness, and his face, from the commencement to the end of judge WESTBROOK's address, retained the same impassive expression which it invariably bore during the three trials.

Phelps was conveyed to the penitentiary within whose secure walls the next fifteen years of his life are to be spent, on Wednesday morning.